■ In the Matter of the Guardianship of MIRNA GILBERT, an Infant. LITTLE FLOWER CHILDREN'S SERVICES, Appellant; ELIDE GILBERT, Respondent.—Order, Family Court, New York County (Leah Ruth Marks, J.), entered February 5, 1986, which dismissed the petition of Little Flower Children's Services, on behalf of Mirna Gilbert, to terminate the parental rights of her father Elide Gilbert on the grounds of permanent neglect, unanimously reversed, on the law and the facts, and the petition granted, without costs. Pursuant to Family Court Act § 625 (a), the Family Court of the State of New York, New York County, is directed to conduct a dispositional hearing in this matter forthwith.

Mirna Gilbert was born April 10, 1980 to Estrella and Elide

Gilbert. When Mirna was two months old, her mother threw her out of a second-story window. Since that time, Mirna has been placed in the custody of petitioner Little Flower Children's Services and she lives with foster parents who provide a loving environment. Estrella, her natural mother, is a chronic schizophrenic who has been intermittently hospitalized and undergone outpatient psychiatric care for over 18 years. In related orders dated January 27, 1986 and May 9, 1986, not at issue on this appeal, the Family Court terminated her parental rights.

The petition against the father alleged that he failed to visit Mirna on a regular or consistent basis, failed to maintain adequate contact with the agency, failed to obtain suitable housing in preparation for the return of the child and failed to attend family counseling sessions, or to develop a suitable plan for the child's future. After three days of hearings, the Family Court dismissed the petition vis-à-vis the father, making a conclusory finding that the petitioner agency made unrealistic efforts to help the father make plans for the child, and that "its efforts having been unrealistic, they cannot be deemed diligent as required under the law." (Social Services Law § 384-b [7].) The Family Court did not, however, make any factual findings regarding the demonstrable neglect by the father.

We find that the petitioner did exert diligent efforts to encourage and strengthen the parental relationship, and we also find that Elide Gilbert has permanently neglected Mirna by failing to maintain contact with the child or plan for her future. Accordingly, we reverse and grant the petition.

The legal standard for "permanent neglect" as a basis for terminating a parent's right to a child requires a showing that the parent has failed for a period of more than one year following the date the child has come into the care of an authorized agency to substantially maintain contact with or plan for the future of the child, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship. (Social Services Law § 384-b [7].) The diligence required of an agency includes meaningful efforts to provide counseling with respect to the problem(s) which impede the return of the child, consultation and cooperation to assist in planning for the child's future, and the making of suitable arrangements for visits with the child. *(See, e.g., Matter of Sheila G.,* 61 NY2d 368.)

Here, the Family Court made a somewhat puzzling finding, in light of the record, that the agency did not perform its duty

because "it failed to take into consideration the extent of the mother's illness" and that the "agencies diligent efforts ought to have been directed to help the father develop a plan which did not depend upon the mother's assistance".

Quite to the contrary, the record reveals that the agency made extremely diligent efforts to assist the family both with respect to the mother's condition and in evolving an alternative plan for Mirna's caretaking that did not depend upon the mother's assistance. The record also clearly demonstrates that the frustration of those efforts was primarily due to the father's indifference and failure to avail himself of, or even respond to, the continued assistance that was offered.

The agency, Little Flower Children's Services, arranged for family counseling so that the family members, and particularly Mr. Gilbert, would actively support the mother's treatments to help pave the way for Mirna's return to the family home where the mother would continue to reside. However, Mr. Gilbert never appeared at the Williamsburgh Community Services Center for the family counseling sessions arranged by Little Flower. The caseworker continually stressed to Mr. Gilbert how important it was for Mrs. Gilbert to regularly receive her treatment. When she did not attend her regular psychiatric therapy sessions nor take the prescribed medication which was essential to control her symptoms, Mr. Gilbert was urged to accompany her to those sessions to insure that she received her therapy, but he failed to do so. The agency also arranged home visits for its caseworker to counsel Mr. Gilbert, but out of 19 separate appointments, Mr. Gilbert was home to receive the caseworker only twice.

Given the lack of progress made by the mother, Estrella Gilbert, it was suggested in 1983 that their then 20-year-old daughter Melba could be Mirna's surrogate caretaker under the father's supervision. However, after extended observation by Little Flower, Melba was found to be irresponsible and to have poor judgment, with documented instances in the record to support such conclusion. Moreover, during the following two years Melba made infrequent contact with the agency, visited the child only eight times, and, in the words of the caseworker, "wasn't interested enough". Accordingly, despite the agency's diligent efforts, this plan did not succeed.

Most important, the agency made active attempts to arrange for visitation of Mirna by the parents to encourage and strengthen the parental relationship. As demonstrated in record, the agency provided its facilities for visitation at least

semimonthly. The parents rarely took advantage of these opportunities and often missed appointments which were made. As indicated by the agency's business records which were produced at the hearing, the father visited Mirna an average of only six times per year during the five-year period, with the last visit in 1984 taking place on November 24, and the next visit taking place some five months later on April 27, 1985. Significantly, the father initiated requests to visit Mirna only twice during this entire period. As a result of his infrequent visits to the child during the five-year period, the child did not really know who he was and often called him "grandpa".

The father also failed to provide adequate and proper housing for Mirna. The extensive caseworker notes, dating back to 1982, entered into evidence, describe the family apartment as "falling apart", with no efforts by the father to ameliorate the situation over the years. When the bathroom ceiling caved in, leaving the bathroom inoperable, it was not repaired for almost a year. At various times the caseworkers noted dog waste on the floor, garbage strewn throughout, dirty dishes remaining piled in the sink, stained sheets on the beds, and many other indicia of continued unsanitary conditions of filth and disrepair. The individual bedrooms were padlocked because of stealing by the other brothers and sisters and a distrustful intrafamilial relationship existed.

The record clearly establishes that despite the diligent efforts of the Little Flower Children's Services, the father Elide Gilbert failed to maintain regular contact with Mirna, failed to obtain suitable and adequate housing in preparation for her return and consistently failed to cooperate with, or pursue the various constructive avenues suggested by, the agency to provide a suitable plan for the child's future, and, as a consequence, a finding is made that Mirna was permanently neglected within the meaning of Social Services Law § 384-b (7).

During the more than six years that Mirna has been in the custody of the Little Flower agency she has lived with foster parents who have manifested their desire to adopt her and who have provided a secure and loving home setting that stands in stark contrast to that offered by the indifferent absentee natural parents who have permanently neglected her. Accordingly, the petition to terminate the rights of the respondent father is granted. Concur—Kupferman, J. P., Ross, Rosenberger and Ellerin, JJ.